SALLY ROUNTREE *et al. v.* J. A. BARNETT *et al.*

Where a petition to sell land was filed in the Court of Equity prior to the adoption of the constitution in 1868, and orders were made therein before that time, and after that year a motion was made against the clerk and master in the same cause, the new mode of procedure will apply to it, and upon an appeal, the Supreme Court will not take jurisdiction to rehear any issues of fact decided by the Judge in the Court below, but if it appears that such issues were decided by the Judge without objection from the parties, and that his decision was clearly right, the Supreme Court will proceed to act upon it and confirm his judgment.

When money is invested by a clerk or other officer under the orders of a Court, the clerk or other officer cannot change the investment without the sanction of the Court or the parties, and if he does so, he will be responsible for any loss that may accrue, for he will be held to a much stricter accountability than a guardian or trustee would be under similar circumstances, because the clerk or other officer might get the consent of the parties or the advice and direction of the Court, while the guardian or trustee would be compelled generally to act upon his own judgment.

While generally a clerk or other offices cannot change an investment which he has made under the order of a Court, yet if a sudden and unexpected loss is threatened, he may do so, but in such case he must show a necessity for such prompt action, and that he acted in good faith and with ordinary prudence; and he must, as soon at he can, report his action to the Court.

This was a PETITION for the sale of land filed in the Court of Equity for PERSON county, at the May Term, 1855, and thereupon an order was made for the sale upon the usual terms. At the November Term, 1856, it was decreed that the clerk and master invest the purchase money in loans

upon bond, taking two or more good sureties, and that he collect the interest annually on the 1st day of January, of every year, and pay the sum to the plaintiff, Sally Roundtree. The cause was then retained for further directions. At the Fall Term, 1871, of the Superior Court of Person county, a notice was ordered to be issued to the defendant, John A. Barnett, the late clerk and master and his sureties, that at the next term of the Court a motion would be made for a judgment against them for money received and not accounted for. At the ensuing Term of the Court it was referred to the clerk of the Court to state and report on account, &c. Upon the return of the report with the evidence upon which it was founded, the counsel of the defendant, Barnett, filed exceptions thereto :

1. That the defendant is charged with the sum of $582, alleged to have been received from John Bradsher, former clerk and master, and interest thereon when no such sum was so received or came to the hands of the said defendant.

2. That the defendant is not allowed credit for the sum of $1,000 invested in a bond of the *de facto* government of the Confederate States, such investment being justified at the time it was made by the state of the country, and the example of prudent men of business.

3. That the defendant is not allowed credit for the sum of $—— the fund of this cause in the office, which were passed over by this defendant or his deputy in office, to his successor, which is shown by the evidence of W. R. Webb.

These exceptions were passed upon and overruled both as to the law and facts embraced in the issues by his Honor, *Tourgee, J.,* at the Fall Term, 1872, and the defendant appealed. A sufficiency of the evidence is stated in the opinion of the Court.

*W. A. Graham,* and *Battle & Son,* for the defendant.
*J. W. Graham,* for the plaintiff.

RODMAN, J.   This case comes to us upon exceptions to certain findings of facts by his Honor, the District Judge, in accordance with the report of a referee.   Although the action in which the proceedings were had began before 1868, yet as the motion against the clerk and master and his sureties was made after 1868, we consider that we have no jurisdiction to rehear any issues of fact decided by the Judge below.   In this case the controverted matters arise upon what are substantially issues, which would have been made upon the pleadings if the plaintiff had set forth more particularly the matters alleged by her, and the defendants had answered as regularly as they should have done.   The parties have waived the irregularities, and have treated the exceptions to the report of the referee as raising the issues. Neither party asked that the issues thus treated as made should be tried by a jury, nor did they in writing waive a trial by jury and consent that the Judge should find the facts.   They have made no objection to his doing so, and if his doing so was irregular it has been waived.   Under these circumstances, while we would refuse to decide any issues of fact, if it appeared to us that any of the findings of the Judge were plainly mistaken, we might remand the case to him, in order that the parties might if they chose have the doubtful questions passed on by a jury.

For this purpose we have carefully examined all the testimony which was before his Honor, and we do not see that he has erred in his conclusions :

1.  As to the sum of $582, the defendant, Barnett, is charged with, as received from his predecessor, Bradsher, it is true that Webb, who received it as the deputy of Bradsher, says it was never paid to the defendant, Barnett, that he knows of, and there was no direct evidence that it was.   But it was the duty of Barnett to have called on his predecessor for an account, and he did so, and received some of the property, viz.: the notes.   Although he would not become liable by

reason of his failure to demand an account, except perhaps for the damage which resulted from the omission, yet the existence of this duty gives force to the fact that he paid to Mrs. Rountree interest before he received anything for her, if he had not received this sum, and that the sum paid so nearly corresponded with the interest on this amount.

2. We also concur with his Honor in his decision on the second exception, and we think his decision should have been the same, assuming what is testified to by Webb as true.

The original order directed the sale to be made on a credit of twelve months. The subsequent order at Fall Term, 1856, directed the clerk to invest the proceeds in notes with security, and to pay the interest to Mrs. Rountree annually during her life. No form was prescribed for the note, but evidently a form was contemplated by which it would not have been in the power of a debtor to pay at any time he might choose to do so. The purchasers at the sale were entitled to tender the money at the expiration of the credit. But it may be doubted whether, under the circumstances, Harvey Rountree had not lost his right to make a tender in 1859. Certainly the clerk was not obliged to accept a partial payment, nor would a tender of part have stopped the interest. Neither was the clerk bound to accept payment of the residue in Confederate money in 1862. Was he justified in doing so under the circumstances? The fund was safe as it was; any change in the investment involved some loss of interest in the interval before reinvestment; the new security might be more precarious. The clerk in unnecessarily accepting these two payments without previous authority from the Court, without consulting the parties interested in the fund, and without afterwards reporting the fact to the Court and obtaining its sanction, was guilty of imprudence, to say the least of it. And when afterwards he repeatedly changed the investment, first by lending the

money to Mason and receiving payment from him a short time afterwards in Confederate money, and then to Smith, with the same result, and finally by purchasing a Confederate bond, all without the sanction of the Court or of the parties, he was guilty of official misconduct, and became liable for any loss resulting.

Public policy and the safety of the funds held by the officers of Courts for the use of suitors under the orders of the Courts, require a different and stricter rule of responsibility to be applied to them than to administrators and guardians and trustees of a like character. These last are compelled to act upon their own judgment. They can rarely consult their *cestui que trust*. Only under extraordinary circumstances are they entitled to apply to a Court for its advice. But an officer of a Court may generally consult the parties in interest as to any change in the disposition of the fund, and he may always ask the advice of the Court, and that if given without fraud on his part will be a protection. The Court in such cases is really the trustee, and the officer only its agent to obey its orders. He has no power and no discretion beyond what is contained expressly or by implication in the orders of the Court. He is personally liable for every loss which may happen by reason of his acting without or beyond them. In this case the question is not, did prudent, business men receive Confederate money at the times when the clerk in this case did; nor even whether a guardian would have been justified in receiving it. But whether the clerk was authorized by the orders of the Court in dealing with the fund in the way he did in receiving payment unnecessarily, and in a new currency which had never been sanctioned by the Courts, in investing and reinvesting in individual notes, whether with or without security, and finally in a Confederate bond without consulting the Court or even reporting his dealing. The assent of the parties interested would have estopped them from complaint, but

they were not consulted. We do not say that there can be no case in which a clerk or like officer would not be justified in calling in or changing an investment without the previous sanction of the Court or of the parties. But to justify his conduct in such a case he must show a necessity for prompt action, to prevent a threatened loss, and must report his action to the Court. In such a case where the necessity was clearly proved, a Court would deal liberally with him, and require nothing but *bona fides* and ordinary prudence. But when he assumes the power to change and rechange an investment at pleasure, without consulting or informing the Court, he does so at his own risk of the safety of his course. Mere *bona fides* will not save him.

3. The third exception seems to have no foundation in fact. The defendant was allowed all he paid to his successor.

Judgment in this Court.

PER CURIAM.                                         Judgment affirmed.